# Lippman v. The State.

*Prosecution for Selling or Conveying Property on which there was a Lien, without the Consent of the Holder of the Lien.*

1. *Consignment of personal property ; when title passes.*—A consignment of personal property, intrusting it to a common carrier for delivery to the person named in the bill of lading or receipt given by the carrier, the bill of lading or receipt not expressing otherwise, *prima facie* vests the title to the property in the consignee.

2. *Conveyance of mortgaged property.*—Where on a trial for selling or conveying mortgaged property without the consent of the mortgagee, it is shown that, without the consent of the mortgagee, the mortgagor shipped the mortgaged property by railroad, consigned to a third person, taking a receipt therefor from the railroad company, and the defendant testified that the property was shipped to the consignee for him "to do what he pleased with it," there was such a conveyance or transfer of said property as to be violative of the statute, (Code, § 3836), under which the defendant was prosecuted.

APPEAL from the Criminal Court of Jefferson.

Tried before the Hon. SAMUEL E. GREENE.

The facts of the case are sufficiently stated in the opinion.

No counsel marked as appearing for appellant.

Wm. L. Martin, Attorney-General, and John H. Miller, for the State.—The bill of lading vested legal title in Lewis Lippman, his father, and gave him control of the property.—*L. & N. R. R. Co. v. Fulgham*, 91 Ala. 557 ; *Pemberton v. N. Y. Cen. R. R. Co.* , 104 Mass. 144.

The word *convey* when applied to a disposition of property, has the signification of *transfer;* and means the passing of title and dominion from one person to another, and is intended in this statute to prohibit the mortagor or maker of a lien, etc., from disposing of the property, so that the security of the mortgage or lien or deed of trust would be endangered or embarrassed. This danger or embarrassment would result from any transfer by which possession was changed.—*Johnson's Case*, 69 Ala. 593.

BRICKELL, C. J.—The appellant was prosecuted to conviction upon a complaint charging him with having sold or conveyed two Hammond type-writers, on which he had given a mortgage in writing to the Dispatch Printing Company, without the consent of the mortgagee, the mortgage debt being unpaid. A trial by jury was waived, and the case submitted for decision to the court. The bill of exceptions purports to contain all the evidence, and the only question arising, is the sufficiency of the evidence to support the judgment of conviction.

The material facts are, that the Dispatch Printing Company, partly in payment of a debt owing it, and partly for money advanced the appellant, discounted a promissory note made by his father, Lewis Lippman, payable to the appellant four months after date. To secure the payment of this note, the appellant executed a mortgage conveying two Hammond type-writers, and some other articles of personal property. A day or two before the maturity of the note, the appellant shipped the type-writers from Birmingham, his domicil, and that of the mortgagee, by railroad, consigned to his father at Savannah, Georgia, taking from the railroad a receipt for their transportation and delivery, in which his father was named as the consignee, but which the appellant retained. The shipment was made without any previous agreement with the father, nor was he no-

[Lippman v. The State.]

tified of it when it was made. When or how he was informed of it, is not shown. It is apparent that he accepted the consignment, and had control and possession of the type-writers, for the freight was payable at Savannah; and near two months after the shipment, on request of the appellant, after the commencement of the prosecution, he returned the type-writers to him at Birmingham. The appellant testified that he sent the type-writers, without giving any instructions about them, intending that his father should do what he pleased with them, as he had at different times advanced to him much money. These are the material facts.

The statute on which the judgment of conviction is founded (Cr. Code, § 3836), was construed in *Johnson v. State,* 69 Ala. 593–97. It was said : "The statute by its words embraces not only a sale but a conveyance of the property. The word *convey* when applied to a disposition of personal property has the signification of *transfer;* and means the passing of title and dominion from one person to another. It is in this, its largest sense, it is employed in this statute, intended to prohibit the mortgagor, or maker of a lien, or grantor in deed of trust, from disposing of the property, so that the security of the mortgage, or lien, or deed of trust, would be endangered or embarrassed. The danger or embarrassment would result not only from a sale, but from an exchange, a gift, or any other transfer, by which a title, not in subordination to the mortgage, lien, or deed of trust, was created, or by which the possession was changed. A word of large meaning was employed by the law-maker, to prevent evasion of the statute, by the adoption of other instrumentalities than such as would have been designated by a word of more limited significance."

Adhering to this exposition of the statute, there was a *conveyance* or *transfer* of the type-writers, offending its letter and spirit. A consignment of goods, intrusting them to a common carrier for delivery to a person named in the bill of lading or receipt given by the carrier, the bill of lading or receipt not expressing otherwise, *prima facie* vests the title to the goods in him to whom they are deliverable.—*Jones v. Sims,* 6 Port. 138; *Ezell v. English,* Ib. 311; *Grove v. Brien,* 8 How. (U. S.) 429; *Lawrence v. Minturn,* 17 How. (U. S.) 100. The presumption may

be rebutted by evidence *aliunde*, that it was not the intention of the consignor to part with the title. How far such intention would be admissible, or whether it would qualify, relieving from offensiveness to the statute, a *transfer* of the possession and dominion over the goods by a consignment, it is not necessary now to consider, for the distinct positive evidence of the appellant is, that the.consignment was made to enable the consignee "to do what he pleased with the type-writers," which he could not do, if he had not the title. The purpose of the consignment is manifested and avowed—the purpose to pass not only the possession and dominion, but title so far as the appellant had capacity to pass the title. The receipt of the railroad company for the transportation and delivery, was not forwarded to the consignee, but was retained by the appellant. With or without the production of the receipt the carrier, delivering the goods at the point of destination, not being otherwise advised, was bound to deliver them to the consignee. A delivery to him operated to discharge the carrier from all liability, and to satisfy all the duties imposed by the receipt. *Sweet v. Barney*, 23 N. Y. 335; *O'Dougherty v. Boston & W. R. R. Co.*, 1 N. Y. Sup. Ct. Rep. 477. The consignment, passing, and intended to pass, to the consignee title to, possession of, and dominion over the type-writers —a title not in subordination, but in hostility to the mortgagee—was a *conveyance*, or *transfer*, violative of the statute; and there must be an affirmance of the judgment of conviction.

Affirmed.